UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: .

JULIE MARTY,

Plaintiff,

vs.

COLLIER COUNTY PUBLIC SCHOOL DISTRICT.

Defendant.

_____/

**COMPLAINT**

Plaintiff, JULIE MARTY ("Plaintiff" or "MARTY"), by and through the undersigned counsel, hereby files this her Complaint against Defendant COLLIER COUNTY PUBLIC SCHOOL DISTRICT (hereinafter "Defendant" or "SCHOOL DISTRICT") for damages and relief pursuant to the Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq.* (Title VII), and the Florida Civil Rights Act, Florida Statutes §760.01 *et seq.* (FCRA).

and allege as follows:

1

## JURISDICTION

1. This is an action for damages under Title VII in which this Court has original jurisdiction over the action pursuant to Jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1337, 1343, and 1367.

## PARTIES &VENUE

2. Plaintiff, MARTY, is a resident of the State of Florida and this judicial district, is *sui juris*.

3. Defendant SCHOOL DISTRICT is located at 5775 Osceola Trail, Naples, Florida 34109 was the employer of MARTY

4. Venue is appropriate in this Court as all actions took place in this judicial circuit.

## FACTS GIVING RISE TO THE CLAIM

5. On May 6, 2021 Plaintiff started work as a Financial Services Accountant in the School District's Budget Department.

6. Prior to that time, MARTY, who had worked in the Collier County government system had received good reviews applied for an open position.

7. Walter Hawkins was a director of Human Resources for the Defendant.

8. On April 14, 2021, MARTY interviewed for the position of Financial Services Accountant .

9. On April 22, 2021, Artus Nemati verbally offered MARTY the position of Financial Services Accountant.

10. That same day, Walter Hawkins invited MARTY over to his house celebrate the offer with a bottle of tequila. He also told the Plaintiff that she was beautiful and wanted to see more pictures (specifically full body swimsuit photos) of her.

11. During the onboarding process and after starting work, Hawkins continued to contact the Plaintiff. Plaintiff felt that that this was leading to a sexual relationship between her and Walter Hawkins who had continued to ask for pictures of her in bathing suits. As a director in HR, Hawkins was in charge of internal investigations at the School District.

12. The contacts from Hawkins to the Plaintiff was affecting the Plaintiff's work, and as a single mom who gave up a county position to take this position were taking a toll on her.

13. On or about May 23, 2021, Plaintiff made a complaint of sexual harassment against Hawkins by reporting it to Valerie Wenrich

14. The School District terminated Hawkins.

15. Plaintiff was scared to make the complaint, but realized that the harassment was affecting her work and her relations with new co-workers. In addition, as a single mom, Plaintiff did not want this to affect her employment.

16. On or about May 25, 2021, Valerie Wenrich again met with the Plaintiff in the conference room where she said that MARTY was "forbidden from speaking about the matter, and I was interfering with her investigation." MARTY felt that her tone and demeanor were hard and unsympathetic, and tried explained that the situation was affecting her concentration at work and felt that her team should have some awareness of the situation, to explain her anxious emotional state.

17. On May 27, 2021, Plaintiff had her first therapy session with Susie Rossbottom at the CCPS Employee Emotional Wellness Center because, as she told her, predatory men in positions of power have

triggered my PTSD. She recommended starting EMDR Trauma therapy with her.

18. Monday May 31, 2021 was Memorial Day, yet Walter Hawkins called the Plaintiff's cell phone 5 times between 10:11PM and 10:18PM. She did not answer the calls.

19. Plaintiff sent Valerie Wenrich an email informing her of the calls from Walter Hawkins, as she had specifically told me to let her know if he reaches out to her so she could get another department involved. Ms. Wenrich advised "So block him".

20. ON June 4, 2021, Plaintiff reached out to the School District's Title IX coordinator Dr. Tammy Caracker's office, as well as the School District's legal department to follow up on the harassment complaint. Neither legal, nor the Title IX office could confirm that they had knowledge of the complaint or the situation. Plaintiff was concerned that as it was kept internally within Human Resources.

21. The same day, Valerie Wenrich and Plaintiff's supervisor went to the office of Siobhan Fox. Wenrich stood and told the Plaintiff among other things:

a) Walter Hawkins was terminated for unquestionable harassment and stalking, but she decided that there was no sexual nature in the information provided.

b. Dismissed Plaintiff's concern that it was a conflict of interest for her to investigate her own direct report, when in a Title IX complaint, the investigator and decision maker were not to be the same person.

c Denied telling Plaintiff that there had been TWO prior complaints against Walter Hawkins, then changed her story when Plaintiff reminded her that she told me about the complaints against Walter to the legal and HR departments.

d. Denied that it should have been escalated to Dr. Caracker, the Title IX coordinator.

e. Told Plaintiff that she was incorrect that she emailed her the information about Walter's calls on 5/31/2021.

6

f. Told Plaintiff she needed to focus on my job, not my personal problems at work. Plaintiff reminded her that this was NOT a personal problem and routed solely from my interview stages/onboarding stages for my position at CCPS, and that Walter was not and never was part of my personal life. This situation is a work-related issue, not a personal issue, although it has greatly affected Plaintiff's stress levels, sleep, the emotional wellbeing of her and her son.

22. On or about June 7, 2021, Plaintiff submitted an inquiry with the EEOC, and filed a complaint with the School District's Title IX Coordinator.

23. Shortly after filing with the Title IX Coordinator and after the June 4, 2021, meeting with Wenrich knowing full well Plaintiff would make a Title IX complaint and knowing Plaintiff's objections to the handling of the complaint, Defendant cutoff the ability of the Plaintiff to received mental health benefits at the emotional wellness center.

24. On or about June 10, 2021, Plaintiff met with the deputy superintendent Dr. Dotres, who expressed his shock/disbelief that Plaintiff would be cut off from the third-party mental health therapists office on site at the School District's admin building. agreed that it is

7

both retaliation and discrimination if it is the case, and whomever directed the therapist to discontinue my treatment will be further investigated.

25. Plaintiff received a write up for lack of concentration and making errors on procedures she was never taught correctly, while referring to contract she never received. Plaintiff was also told specifically during the writeup not to mention her sexual harassment claim.

26. On or about June 15, 2021, Dr. Dotrs advised the Plaintiff amongst other things that:

a. he stands behind Valerie Wenrich in her decision to fire the director of HR, Walter Hawkins, for the downgraded cause of termination of harassment and stalking.

b. If the plaintiff was written up for lack of concentration, it was on the Plaintiff to remedy the situation. The Defendant refused to acknowledge that Plaintiff was treated differently than any other employee and need to "work out my issues".

27. That Friday, June 18, 2021, the Defendant terminated the Plaintiff's employment.

28. The reasons proffered by for terminating Plaintiff's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for unlawful discrimination and retaliation in violation of Title VII, and the FCRA.

29. On July 21, 2021, Plaintiff dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) against the Defendant charge number 510-2021-04607. Defendant responded to the charge.

30. On May 25, 2021 Plaintiff received the notice of right to sueletter from the EEOC.

31. This action is timely filed.

32. Plaintiff exhausted all administrative remedies on the claims pled in the Complaint.

33. All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e ET SEQ. – HARASSMENT/DISCRIMINATION**

34. Plaintiff, reasserts and reaffirms the allegations of Paragraphs 1 through 33 as if fully set forth herein and further states that this is an action against Defendant for harassment/discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

35. Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual because of ..sex"

36. As a director in human resources Walter Hawkins is empowered by the employer to take tangible employment actions against MARTY and as such is a supervisor.

37. Marty's supervisor harassed her because of her sex;

38. The harassment created a hostile work environment for Marty;

39. As a proximate cause, Plaintiff suffered damages as a result of the harassment.

40. Marty was subjected to offensive acts or statements about sex (b) Marty did not welcome the offensive acts or statements,; (c) the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of Marty's employment; (d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and (e) Marty believed that the offensive acts or statements materially altered the terms or conditions of her employment.

40. The School District's failure to investigate prior complaints against Hawkins shows its allowance for and failure to take reasonable care to prevent and promptly correct any harassing behavior in the workplace.

41. Defendant's violations of Plaintiff's rights under Title VII were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

42. Plaintiff has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of 42 U.S.C. §2000e-2(a)(1).

43. Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT II

### RETALIATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *ET SEQ.*

44. Plaintiff, reasserts and reaffirms the allegations of Paragraphs 1 through 33 as if fully set forth herein and further states that this is an action against Defendant for Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3.

45. Pursuant to 42 U.S.C. §2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …. because [the employee] has opposed any practice made an unlawful

employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

46. On multiple occasions during her employment with Plaintiff objected to and opposed what

Plaintiff in good faith believed was sexual harassment and disparate treatment by Hawkins and the subsequent lack of proper investigation.

47. When she complained objected to and opposed what Plaintiff reasonably and in good faith believed was unlawful sexual discrimination against her.

48. Further, Plaintiff engaged in other protected activity by making a complaint to the Title IX director, and telling her supervisor about it prior to the complaint being made. Defendant immediately cut her off from the mental wellness services she so desperately needed.

Plaintiff continued to complain and was terminated very shortly thereafter.

49. Plaintiff engaged in protected activity within the meaning of Title VII, 42 U.S.C. §2000e-3(a).

50. In retaliation for Plaintiff's good faith opposition to Defendant's actions Defendant unlawfully terminated Plaintiff's employment for reasons that were false and a pretext for unlawful retaliation

against Plaintiff in violation of the law.

51. Plaintiff has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of 42 U.S.C. §2000e-2(a)(1).

52.. Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), Plaintiff is entitled to recover from Defendant her reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT III

### SEXUAL HARASSMENT IN VIOLATION OF THE FCRA

53. Plaintiff reasserts and reaffirms the allegations set forth in paragraphs 1 through 33 above and further states that this is an action against Defendant. for sexual harassment in violation of Florida Statutes §760.10(1).

54. The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer "[t]o discharge . . . any individual, or otherwise to discriminate against any

individual with respect to compensation, terms, conditions, or privileges of employment, because

of such individual's sex . . ." F.S. §760.10(1)(a).

55. At all times material to this action, Plaintiff has been an aggrieved person within the meaning of the FCRA, F.S. §760.02(10), and the Defendant is an employer within the meaning of this statute.

56. As a director in human resources Walter Hawkins is empowered by the employer to take tangible employment actions against MARTY and as such is a supervisor.

57. Marty's supervisor harassed her because of her sex;

58. The harassment created a hostile work environment for Marty;

59. As a proximate cause, Plaintiff suffered damages as a result of the harassment.

60. Marty was subjected to offensive acts or statements about sex (b) Marty did not welcome the offensive acts or statements,; (c) the offensive acts or statements were so severe or pervasive that they materially altered the terms

15

or conditions of Marty's employment; (d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and (e) Marty believed that the offensive acts or statements materially altered the terms or conditions of her employment.

61. The School District's failure to investigate prior complaints against Hawkins shows its allowance for and failure to take reasonable care to prevent and promptly correct any harassing behavior in the workplace.

62. Plaintiff has suffered lost earnings, emotional distress, loss of self-esteem, and other damages as a direct result of Defendant's violations of F.S. §760.10(1).

63. Pursuant to F.S. §760.11(5), Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Defendant as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff demands judgment against Defendant, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT IV

## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

64. Plaintiff reasserts and reaffirms the allegations set forth in paragraphs 1 through 33 above and further states that this is an action against Defendant for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

65. Pursuant to F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

66. At all times material to this action, Plaintiff has been an aggrieved person within the meaning of the FCRA, F.S. §760.02(10).

67. On multiple occasions during her employment with Plaintiff objected to and opposed what

Plaintiff in good faith believed was sexual harassment and disparate treatment by Hawkins and the subsequent lack of proper investigation.

68. When she complained objected to and opposed what Plaintiff reasonably and in good faith believed was unlawful sexual discrimination against her.

69. Further, Plaintiff engaged in other protected activity by making a complaint to the Title IX director, and telling her supervisor about it prior to the complaint being made. Defendant immediately cut her off from the mental wellness services she so desperately needed. Plaintiff continued to complain and was terminated very shortly thereafter.

70. Plaintiff engaged in protected activity within the meaning of FS 760.10 et.seq

71. In retaliation for Plaintiff's good faith opposition to Defendant's actions, Defendant unlawfully terminated Plaintiff's employment for reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of the law.

72. Plaintiff has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of FS 760.10

73.. Pursuant to FS 760.11(5) Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated this 22nd day of August 2022

                                                      **__s/ Stuart M. Silverman, Esq.**
                                                      STUART M SILVERMAN P A
                                                      PO Box 812315
                                                      Boca Raton, Florida 33481-2315
                                                      Tel: (561) 289-9319
                                                      Fax : (561) 283-0900
                                                      E-Mail:Smslawfirm@aol.com
                                                      FL. Bar No.: 717614

Attorney for **Plaintiff**